UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,    :
                                                                :
                                                                 :        **MEMORANDUM AND ORDER**
                  -against-                    :        12-CR-121 (DLI)

JARED K. SINGH,                  :

                    Defendant.    :
------------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

      On February 14, 2012, defendant Jared K. Singh ("Defendant") was indicted for conspiring to import 500 grams or more of cocaine in violation of 21 U.S.C. §§ 952(a), 963, 960(a)(1) and (b)(2)(B)(ii), as well as 18 U.S.C. § 3551 *et seq*. On May 3, 2012, Defendant moved pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure to suppress statements he made to Customs and Border Protection ("CBP") officers and physical evidence seized by the CPB. Defendant also moved to compel discovery of various materials, including Jencks Act, 18 U.S.C. § 3500, and *Brady* materials, and sought "leave to supplement and/or amend" any of Defendant's motions. The government opposed Defendant's motions. For the reasons set forth below, Defendant's motions are denied in their entirety.

## BACKGROUND

      The following background is taken mostly from the complaints filed against Defendant and his co-defendant, Auria Torres ("Co-conspirator #1"), as they are the only sworn evidentiary materials currently in the record, and are thus undisputed for purposes of these motions.

      On January 16, 2012, Co-conspirator #1 arrived with a friend ("Friend") at John F. Kennedy International Airport ("JFK") aboard a Caribbean Airlines flight from Port of Spain, Trinidad. (Singh Compl., Dkt. Entry 1, ¶¶ 1-2.) At the airport, the Friend's luggage was

1

inspected by a CBP officer. (*Id.* ¶ 3.) The CBP officer discovered six packages of what appeared to be white powdered milk in the Friend's luggage. (*Id.*) The CPB officer field tested the packages and the powder in two of the packages tested positive for cocaine. (*Id.*) The packages containing the cocaine were found in a small red suitcase, with "J + P Singh" written in marker on the outside. (Torres Compl., Dkt. Entry 1, ¶¶ 5-6.) After waiving her *Miranda* rights, Co-conspirator #1 admitted to the authorities, *inter alia*, that she knew that narcotics were in the Friend's luggage, and explained that they had been put in the Friend's baggage in Trinidad at Defendant's direction. (*Id.* ¶ 6.)

The following day, Defendant arrived at JFK on a flight from Port of Spain, Trinidad. (Singh Compl. ¶ 6; *see also* Def.'s Pre-trial Mots., Dkt. Entry 17, ¶ 1.) After disembarking his flight, Defendant was selected for an inspection by the CBP. (Singh Compl. ¶ 7; *see also* Def.'s Pre-trial Mots. ¶ 3.) During the inspection, Defendant presented a red suitcase for examination, with "J + P Singh" written in marker on the outside. (Singh Compl. ¶ 7.) Defendant's suitcase appeared to be similar to the one containing cocaine seized the day before from the Friend and Co-conspirator #1. (*Id.*) The CBP also apparently seized Defendant's cell phone and searched the data on the telephone. (*See* Def.'s Mem., Dkt. Entry 17, at 6.) Defendant was then arrested at JFK and informed of his *Miranda* rights. (Singh Compl. ¶ 8.) After waiving his *Miranda* rights, Defendant admitted, *inter alia*, that he had provided Co-conspirator #1 with the red suitcase she used to carry the cocaine seized the day before and that he intended to pay Co-conspirator #1 for importing the cocaine into the United States. (*Id.* ¶¶ 8-9.)

Defendant was arraigned on the filed complaint on January 18, 2012, and a federal grand jury indicted him on February 14, 2012, charging him with one count of conspiracy to import 500 grams or more of cocaine. (*See* Indictment, Dkt. Entry 7, at 1-2.) On May 3, 2012,

Defendant moved to suppress the statements he made to the authorities and the physical evidence seized from him at JFK. Defendant also moved to compel discovery from the government. (*See generally* Def.'s Pre-trial Mots.)

## DISCUSSION

I. **Motions to Suppress**

    A. **Failure to Submit Affidavit**

As an initial matter, Defendant's motions to suppress are denied without a hearing because he failed to submit an affidavit in support of the motions and, as such, the motions are insufficient as a matter of law. In the Second Circuit, "an evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Watson*, 404 F. 3d 163, 167 (2d Cir. 2005) (quotation marks omitted). Courts in this Circuit have "repeatedly" denied motions to suppress without a hearing "where defendants have failed to provide affidavits alleging facts based on personal knowledge." *United States v. Larranga Lopez*, 2006 WL 1307963, at *3 (E.D.N.Y. May 11, 2006) (citing cases); *see also United States v. Shaw*, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003) ("[I]n the absence of an affidavit based on personal knowledge, no evidence exists to dispute the facts described by the Government."); *United States v. Aparo*, 221 F. Supp. 2d 359, 369 (E.D.N.Y. 2002) (denying motion to suppress where defendant had "not submitted an affidavit alleging facts which would require the suppression of statements if those facts were proved at a hearing."); *United States v. Fruchter*, 104 F. Supp. 2d 289, 308 (S.D.N.Y. 2000) ("To create a factual dispute, defendant must submit sworn factual allegations from an affiant with personal knowledge."); *United States v. Simpkins*, 1996 WL 629567, at *1

(E.D.N.Y. Oct. 16, 1996) ("The motion is denied on the ground that defendant has failed to provide an affidavit based on her own personal knowledge."); *United States v. Brumby*, 1992 WL 373686, at *3 (E.D.N.Y. Nov. 30, 1992) ("The government argues that Sanders' motions to suppress are not supported by an affidavit based on personal knowledge and therefore insufficient as a matter of law. This Court agrees.").

Here, Defendant has not submitted any affidavits, let alone affidavits based upon personal knowledge, rebutting the government's version of events. Instead, Defendant, through his attorney, has presented only an unsworn "Factual Background" in his motion and memorandum of law, which, in any event, fails to provide a version of events that materially contradicts the facts presented by the government. (*See generally* Def.'s Pre-trial Mots. ¶¶ 1-8; Def.'s Mem. 2-3.) In opposition to Defendant's motions to suppress, the government re-submits the complaint against Defendant in this matter, which is a sworn statement by a Special Agent with the United States Department of Homeland Security, describing the search of Defendant's belongings, Defendant's post-arrest interview and arrest. (*See generally* Singh Compl.) As discussed further below, the information provided in the sworn Complaint, as well as information provided in the sworn complaint against the co-defendant in this case, are sufficient to show that the search of Defendant and his arrest were lawful. Therefore, Defendant's motions to suppress his post-arrest statements and physical evidence are denied without a hearing.

Notwithstanding the fact that Defendant's motions are denied because he has not submitted any affidavits in support of his motion, for the reasons set forth below, Defendant's motions are denied because they wholly lack merit.

### B. Motion to Suppress Physical Evidence

Defendant seeks to suppress all physical evidence seized by the authorities at JFK, including his suitcase and the data obtained from his cell phone. (Def.'s Mem. 6.) Defendant contends that searches at international borders, such as JFK, are permissible without reasonable suspicion only when they are "random" and "routine." (*Id.* 4-5, 6.) According to Defendant, CBP's search of Defendant's belongings was neither random nor routine, and was not supported by reasonable suspicion. (*Id.* 6-12.)

As Defendant concedes (*see id.* 4), airports such as JFK are functionally equivalent to international borders, and "[s]ince the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). Indeed, "[i]t is well established that the government has broad powers to conduct searches at the border even where . . . there is no reasonable suspicion that the prospective entrant has committed a crime." *Tabbaa v. Chertoff*, 509 F. 3d 89, 97 (2d Cir. 2007). "[A] suspicionless search at the border is permissible under the Fourth Amendment so long as it is considered to be 'routine.'" *Id.* at 98. To determine whether a search is routine or not, courts evaluate "the level of intrusion into a person's privacy." *Id.* Here, the authorities' search of Defendant's suitcase in JFK upon entering the United States from abroad is plainly a routine border search. *See, e.g.*, *United States v. Irving*, 452 F. 3d 110, 123 (2d Cir. 2006) ("Routine searches include those searches of outer clothing, luggage, a purse, wallet, pockets, or shoes which, unlike strip searches, do not substantially infringe on a traveler's privacy rights.").

Defendant's initial argument, that a border search is not routine when it is part of a criminal investigation rather than a random occurrence, (*see* Def.'s Mem. 4-5), is wholly without merit. The Second Circuit has squarely rejected this argument because "it would make little sense to allow random searches of any incoming passenger, without reasonable suspicion, but require reasonable suspicion for searches of passengers that are suspected of criminal activity." *Irving*, 452 F. 3d at 123 (internal citation omitted).

Defendant also argues that the CBP's search and duplication of his cell phone data were invasive and therefore rendered the entire search non-routine. He launches into a free-wheeling discussion of the potential dangers of suspicionless searches of electronic information. (*See* Def.'s Mem. 7-12.) While the court notes that other courts have held that suspicionless searches of cell phone data at borders are lawful, *see United States v. Joseph*, 2012 WL 163886, at *3 (S.D. Fla. Jan. 19, 2012), the court need not determine whether searching and copying Defendant's cell phone data required reasonable suspicion in this instance. Even assuming, for the sake of argument only, that such a search is too invasive to be considered routine, the government's search of Defendant's cell phone was proper because it was supported by reasonable suspicion. The Second Circuit has instructed that "[a] reasonable suspicion inquiry simply considers, after taking into account all the facts of a particular case, whether the border official had a reasonable basis on which to conduct the search." *Irving*, 452 F. 3d at 124 (internal quotation marks and alteration omitted).

Here, the authorities had information from Co-conspirator #1 that Defendant was involved in the drug smuggling conspiracy. (*See* Torres Compl. ¶ 6.) Moreover, the two kilograms of cocaine brought into the country by Co-conspirator #1 and the Friend was found in a red suitcase with Defendant's first initial and last name written on the front. (Singh Compl. ¶¶

5-7.) Defendant arrived at JFK the following day with a red suitcase apparently from the same set, also with his first initial and last name written on the front. (*Id*.) Although no drugs ultimately were found on Defendant, the information from Co-conspirator #1 and Defendant's and Co-conspirator #1's suitcases gave the CBP ample basis upon which to reasonably suspect that Defendant was part of a drug importation conspiracy. *See United States v. Asbury*, 586 F. 2d 973, 977 (2d Cir. 1978) (government had reasonable suspicion when, among other things, "border officials had received word from a source previously found to be reliable that a couple answering appellants' descriptions was suspected of carrying contraband.").

Accordingly, the search of Defendant's belongings at JFK was lawful and Defendant's motion to suppress physical evidence obtained in the search is denied.

### C. Motion to Suppress Defendant's Statements

Defendant contends that statements he made to the authorities when he was detained at JFK must be suppressed because: (1) his arrest was illegal; (2) there is no evidence that the waiver of his *Miranda* rights was knowing, intelligent and voluntary; and (3) he was denied his right to counsel. (*See* Def.'s Mem. 3, 5-6.) According to Defendant, because his arrest at JFK was not a random and routine border detention, it was illegal because the CBP did not have any probable cause to believe that Defendant was violating any laws. (*Id*. 4-5) The government appears to agree that Defendant's detention at JFK was not routine because he was placed under arrest, but argues that the CBP had probable cause for the arrest. (*See* Government Opp., Dkt. Entry 23, at 8-10.) The government also argues that the evidence is sufficient to show that Defendant's *Miranda* waiver was valid. (*See id* 10-13.)

Where, as here, the government places a suspect under arrest without a warrant, the arrest is unlawful unless supported by probable cause. *See United States v. Fisher*, 702 F. 2d 372, 375

7

(2d Cir. 1983) ("It is fundamental that because Fisher's arrest was made without a warrant it was unlawful unless it was made upon probable cause."). Probable cause "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *Id*.

Under the facts and circumstances of this case, the CBP had probable cause to arrest Defendant. As discussed above, the government had information from Co-conspirator #1 that Defendant was complicit in smuggling the two kilograms of cocaine found in the Friend's luggage the day before. Notably, the luggage containing the cocaine was marked with Defendant's first initial and last name, and the suitcase appeared to be from the same set as the luggage Defendant was carrying upon his arrival at JFK. (*See* Torres Compl. ¶ 6; Singh Compl. ¶¶ 5-7.)[1] Under the circumstances, a person of reasonable caution would be warranted in believing that Defendant was committing or had committed a crime. Thus, Defendant's arrest was lawful.

Defendant's assertion that his post-arrest statements to the police should be suppressed because the government has not established that the waiver of his *Miranda* rights was knowing, intelligent and voluntary is also unconvincing. "Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The government submitted a sworn affidavit

---

[1] In its memorandum of law, the government proffers, among other things, that Co-conspirator #1 told the arresting officers that Defendant would be arriving at JFK the following day. (Government Opp. 2.) This information was proven reliable when Defendant arrived at JFK the following day on a flight from Trinidad. However, even if, in the absence of this information, the CBP officers were on the lookout more generally for Defendant and his luggage following Co-conspirator #1's arrest, the government still would have had probable cause to arrest him.

stating that when Defendant was placed under arrest, he was read his *Miranda* rights, he appeared to understand those rights, and he waived them. (Singh Compl. ¶ 8.) Defendant has not submitted any evidence that contradicts the government's version of events, or otherwise attempted to show that Defendant's waiver was unintelligent or the result of unlawful coercion. Accordingly, the preponderance of the evidence establishes that Defendant was read his *Miranda* rights and that he waived those rights.

Therefore, because Defendant's arrest was supported by probable cause and he waived his *Miranda* rights before giving statements to the authorities, Defendant's motion to suppress his statements is denied.

## II. Discovery Motions

### A. Motion to Compel Production of Rule 16 Materials

Pursuant to Rules 12(b)(3)(E) and 16 of the Federal Rules of Criminal Procedure, Defendant seeks production of discovery he claims has not been produced by the government. (Def.'s Mem. 13.) Specifically, Defendant asserts that the government has not provided: (1) any evidence that Defendant has a prior criminal record, and therefore should not be able to use such evidence for any purpose; (2) certain materials, such as information pertaining to Defendant's arrival at JFK, photographs of Defendant's luggage and information about where his interrogation took place; (3) lab results from tests of the alleged cocaine seized from Co-conspirator #1 or the identity of the expert witness who will testify about the results; and (4) surveillance tapes from JFK. (Def.'s Mem. 13-15.)

The government responds that it is not aware that Defendant has a criminal history and has already given Defendant a criminal history report. (Government Opp. 14.) The government also represents that if it becomes aware that Defendant does have a criminal history, it will be

provided to Defendant. (*Id.*) The court accepts this proffer and, therefore, the request is denied as moot.

The government also asserts that it does not have any photos of Defendant's luggage and has invited Defendant to inspect and copy the discoverable physical evidence the government possesses, but Defendant has not done so. (*Id.* 14-15.) The court accepts this proffer by the government and, thus, the request is denied. Defendant cannot complain that he has not seen the evidence seized from him when he fails to avail himself of the opportunity to inspect it. The government contends further that Rule 16 does not mandate the government to provide written explanations of the applicable events and, in any event, the complaint filed against Defendant in this action provides a detailed description of the relevant events. (*Id.* 15.) The court agrees that nothing in Rule 16 requires the government to draft a detailed description of the relevant events for Defendant, and this request is also denied.

With respect to the lab reports and the identity of the expert who will testify about the results, the government represents that, since the filing of Defendant's motion to compel, Defendant has been provided with the laboratory analysis report and the name of the chemist who performed the test. (*Id.* 15.) The government also proffers that it anticipates calling a narcotics expert at trial, and will provide the Defendant the appropriate information about the expert in a timely fashion. (*Id.* 15-16.) Accordingly, Defendant's request is denied.

Finally, the government asserts that there was no electronic surveillance targeting Defendant. To the extent that Defendant's earlier discovery requests sought any security footage at JFK, the requests made more than three-and-a-half months after Defendant's arrest were untimely, because JFK maintains its security footage for only 60 days, and it is no longer available. (*Id.* 16-17.) The court accepts this proffer. Thus, since the videos apparently no

longer existed when the purported request was made, there is nothing to compel and the request is denied.

### B. Motion to Compel Production of Jencks Act Materials

Defendant moves pursuant to the Jencks Act, 18 U.S.C. § 3500, to compel the disclosure of statements of potential government witnesses at any suppression hearing or trial. (Def.'s Mem. 15-17.) Defendant's request for Jencks Act materials for pre-trial suppression witnesses is denied as moot because, as discussed above, Defendant's suppression motions are denied without a hearing.

Defendant's request for prior statements by government trial witnesses is premature. The Jencks Act "provides that no prior statement made by a government witness [or prospective government witness] shall be the subject of discovery until that witness has testified on direct examination." *United States v. Coppa*, 267 F. 3d 132, 145 (2d Cir. 2001). As this case has not yet proceeded to trial, Defendant's request is denied with leave to renew at the appropriate time.

### C. Motion to Compel Production of *Brady* Materials

Defendant requests that *Brady* material, including information that tends to impeach any witnesses under *Giglio v. United States*, 405 U.S. 150 (1972), be disclosed prior to trial. (Def.'s Mem. 17.) It is well settled under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny that the government has an obligation under the Due Process Clause to disclose to the defense any exculpatory evidence that is material. *See United States v. Persico*, 645 F. 3d 85, 111 (2d Cir. 2011) (citing *Brady*, 373 U.S. at 87). However, the government need only disclose *Brady* materials "in time for its effective use at trial," and not merely upon request of the defense. *United States v. Brown*, 2011 WL 3163171, at *7 (E.D.N.Y. July 25, 2011) (quoting *United States v. Douglas,* 525 F. 3d 225, 245 (2d Cir. 2008)). The same is true for *Giglio* materials. *See*

*United States v. Giffen*, 379 F. Supp. 2d 337, 347 (S.D.N.Y. 2004) ("In the Second Circuit, *Giglio* materials, like *Brady* materials, must be disclosed in time for their effective use at trial." (quotation marks and alteration omitted)).

Here, Defendant concedes that the government has represented it is not aware of any exculpatory material regarding Defendant, but that it will continue to comply with its *Brady* obligations. (Def.'s Mem. 17; Government Opp. 17). The government also represents it will produce any impeachment material well in advance of trial. (Government Opp. 17.) Accordingly, in light of these representations and the fact that the trial date has not been set, Defendant's motion is denied, with leave to renew upon demonstration that the government has failed to comply with its disclosure obligations under *Brady*, *Giglio*, and their progeny.

## III.    Motion for Leave to Supplement

Defendant moves for leave to supplement his motions in order to "reserve[] the right to supplement and/or amend any of the allegations and assertions contained in his motion." (Def.'s Mem. 18.) This request is denied without prejudice. If Defendant seeks to make additional motions or supplement the motions already made, Defendant must seek leave of the court and sets forth good cause why he could not make the additional motions at the time of filing the original motions. *See* Fed. R. Crim. P. 12(e).

## CONCLUSION

For the reasons set forth above, Defendant's motions are denied in their entirety.

SO ORDERED.

Dated: Brooklyn, New York
       June 27, 2012

                                                    /s/
                                           DORA L. IRIZARRY
                                        United States District Judge